UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:15-cv-00020-MOC

| | |
|---|---|
| **ROBERT DUGGER,** ) | |
| ) | |
| Plaintiff, ) | MEMORANDUM OF DECISION |
| ) | AND |
| Vs. ) | ORDER |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#9) and Defendant's Motion for Summary Judgment (#11). The matter has been fully briefed and is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.    Administrative History**

On or about March 15, 2011 the Plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act alleging that he had become disabled on July 15, 2008. (Tr. 145). His claim was initially denied on June 24, 2011 and again upon reconsideration on December 29, 2011. (Tr. 117; 121). The claimant filed a request for a hearing and a hearing was conducted via video conference May 13, 2013. (Tr. 43-83). As of the date of his hearing, the Plaintiff was insured for disability insurance benefits through March 31, 2012. (Tr. 159). At the hearing, Plaintiff, who was represented by counsel, amended his alleged onset date to April 21, 2010. (Tr. 43; 48). The Administrative Law Judge ("ALJ") denied Plaintiff's claim after the

hearing by a decision dated May 17, 2013. (Tr. 18-31). Plaintiff requested Appeals Council review on August 6, 2013, (Tr. 17), which was denied, (Tr. 7-10), making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. Plaintiff sought and was granted additional time to request judicial review. (Tr. 1-2; 5-6). Thereafter, this action was timely filed on February 9, 2015.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or

> without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV.     Substantial Evidence

### A.     Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, the court finds that it is.

### B.     Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

  a.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

  b.   An individual who does not have a "severe impairment" will not be found to be disabled;

  c.   If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

### C.  The Administrative Decision

With an alleged onset date of April 21, 2010, the issue before the ALJ was whether Plaintiff was disabled between that date through the date of decision. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 23). At Step Two, the ALJ identified severe impairments of osteoarthritis in the right knee and arthritic changes of the right shoulder. Id. At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25). The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of medium work, as defined in 20 C.F.R. § 404.1567(c), subject to the following limitations: 1) lifting up to 50 pounds occasionally and up to 25 pounds frequently, 2) standing or walking for no more than six hours in an eight-hour workday; 3) occasional climbing of ladders, ropes, and scaffolds; 4) occasional kneeling; 5) frequent crawling; and 6) frequent front, lateral, and overhead reaching

with both upper extremities. (Tr. 25). The ALJ specifically stated that he found: 1) no limitations in Plaintiff's ability to climb stairs and ramps; 2) no limitations in balancing, stooping, crouching; 3) no limitations on handling or fingering objects; and 4) no visual, communicative, or environmental limitations. (Tr. 25). The ALJ also specifically stated that, although Plaintiff was "functionally illiterate," this presented no barrier to meeting the mental demands of employment, subject to the other restrictions set forth in the RFC. (Tr. 25). At Step Four, the ALJ found that Plaintiff could no longer perform his past relevant work. (Tr. 29). Finally, at Step Five, the ALJ concluded, based in part on testimony from a vocational expert, that Plaintiff retained the ability to perform work available in the economy. (Tr. 30-31). Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 31).

**D. Discussion**

*1. Plaintiff's Assignments of Error*

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence. Plaintiff alleges: 1) in formulating the RFC, the ALJ failed to conduct a function-by-function analysis of Plaintiff's capacity to perform relevant work-related functions; 2) in formulating the RFC, the ALJ failed to consider all of the claimant's impairments, including the non-severe one; 3) in formulating the RFC, the ALJ failed to discuss the individual's ability to perform work activities for a full work day or ongoing work schedule; and 4) the ALJ erred in relying on vocational expert testimony elicited in response to an improper hypothetical question. The court will address each assignment of error *seriatim*.

*2. First Assignment of Error: Function-by-Function Analysis*

Plaintiff argues that remand is required because the ALJ failed to perform a function-by-

function analysis in formulating RFC. RFC is a statement of the most a person can do in a work setting in light if his impairments, and any related symptoms, such as pain. 20 C.F.R. § 404.1545. RFC assesses an individual's ability to do sustained, work-related physical and mental activities in a work setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. SSR 96-8P, 1996 WL 374184, at *1. In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments, including the impact of any related symptoms. Id. An ALJ formulates a claimant's RFC based on all the relevant evidence in the record. 20 C.F.R. § 404.1545.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184, at *1. This assessment must address both the exertional and non-exertional capacities of the individual. Id. at *5. Exertional capacity "addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. Id. Nonexertional capacity considers work-related limitations and restrictions that do not depend on an individual's physical strength, such as "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)...it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." Id. Only after that function-by-function analysis has been completed may RFC "'be expressed in

terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96–8p, 61 Fed.Reg. at 34, 475). Additionally, SSR 96-8p "explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and citations omitted).

Here, Plaintiff alleges that the ALJ failed to perform a function-by-function analysis and failed to complete a narrative discussion of how Plaintiff's impairments relate to specific work-related activities. Specifically, Plaintiff argues that the ALJ failed to sufficiently address the correlation between Plaintiff's shoulder problems and his ability to lift a certain amount of weight, as well as how Plaintiff's required use of a leg brace would affect his ability to perform certain work activities such as sitting, standing, walking, balancing, stooping, and crawling. Plaintiff argues that remand is required based on the Fourth Circuit's recent decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). The Court in Mascio declined to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id. at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Instead, the court found that remand may be appropriate where "'an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki, 729 F.3d at 177). The Commissioner disagrees with Plaintiff's

contentions, arguing that the ALJ provided an appropriate discussion of the substantial evidence of record.

The ALJ here cited substantial evidence in support of his RFC, including treatment notes and medical opinion evidence. (Tr. 23-25). Relevant to Plaintiff's severe impairments, the ALJ discussed an April 23, 2011 consultative examination report from Dr. Maher Agha, which noted Plaintiff's complaints of right knee pain and bilateral shoulder discomfort, as well as his stated need to wear a knee brace. (Tr. 220-223, 257-259). The ALJ also explicitly states, after discussing Plaintiff's medical history, that "Social Security Ruling 96-8p requires a claimant's residual functioning capacity be evaluated in terms of work related functions," and then goes on to summarize the requirements of assessing exertional and non-exertional functions. (Tr. 28). In light of the medical and opinion evidence in the record, as well as Plaintiff's subjective claims, the ALJ "accept[ed]" that Plaintiff had symptoms of discomfort in his right knee and shoulder." (Tr. 28). He then stated "[a]s such, I find the claimant . . . would have been limited to lifting 50 pounds occasionally, 25 pounds frequently." (Tr. 28). As for the other exertional functions that require discussion by SSR 96-8p as they might be affected by Plaintiff's knee and shoulder conditions—sitting, standing, walking, stooping, and crawling—the decision plainly discusses all of them. With regard to sitting, standing, and walking, the ALJ discussed Dr. Agha's statement that, despite the use of a knee brace, Plaintiff could stand or walk for six hours in an eight-hour workday, and sit without limitation. (Tr. 28 (citing Tr. 223)). The ALJ found that Plaintiff "would have been capable of unlimited balancing, stooping, and crouching, with additional limitations to no more than occasional kneeling and frequent crawling." (Tr. 25). The ALJ also found that Plaintiff

would have been limited to the frequent front, lateral and overhead reaching with the bilateral upper extremities, with unlimited handling, fingering and feeling and no sustained visual compromise….claimant would have experienced no communicative or environmental limitations, allowing for unlimited exposure to extreme heat, cold, wetness, humidity, noise, vibration, fumes, odor, gases, dust and even poor ventilation, avoiding concentrated exposure to hazards and heights…the record reveals no significant deficiency in the claimant's ability to perform the work-related activities as required by this medium level of work.

(Tr. 28). Thus, the decision reflects consideration of each the discrete functions required to be addressed by SSR 96-8p.

As to Plaintiff's shoulder conditions, the ALJ began by discussing the April 2011 consultative evaluation in which Plaintiff complained of shoulder problems, and objective testing revealed stiffness, but "range of motion testing, throughout both shoulders, remained within normal limits." (Tr. 26 (citing Tr. 222)). The same consultative examination revealed normal motor strength, normal muscle tone, no sensory deficits, normal reflexes, and normal nerve findings. (Tr. 223). The ALJ then cited an x-ray of Plaintiff's shoulder, which revealed "no evidence of severe functional compromise," "no more than 'minimal' arthritic changes," and no bony abnormalities. (Tr. 26 (citing Tr. 224-225, 270)). Next, the ALJ noted that "[s]ubsequent treatment records reflect no decline" in the status of Plaintiff's shoulder. (Tr. 27). In support of this finding, the ALJ discussed in detail the treatment notes and findings from Plaintiff's February 2, 2012, visit to an emergency room, where he sought treatment for right shoulder pain. (Tr. 27 (citing 258-259)). The treatment notes from that visit show normal findings in nearly every relevant area, from "generalized" pain: Plaintiff had a "full" range of motion in his shoulder, no evidence of trauma or infections, good grip strength, and his shoulder was "[n]eurovascularly . . . intact." (Tr. 27 (citing Tr. 258)). In fact, in light of the normal examination findings, the

physician's assistant who saw Plaintiff did not even recommend an x-ray. (Tr. 27 (citing Tr. 259)). Moreover, Plaintiff's treatment plan made no reference to shoulder pain at all. (Tr. 259).

Regarding his knee injury, Plaintiff claims that the ALJ failed to account for his "trouble bearing weight" on his right leg when he does not wear a brace. (Pl. Br. 8 (citing Tr. 222)). However, the only significant relevant finding that Plaintiff cites as "contradictory evidence" is Dr. Agha's April opinion that Plaintiff had "difficulty" bearing weight on his right leg when the brace came off. (Tr. 222). Upon close review of that medical record, Dr. Agha made no statement regarding the degree of limitation or how much weight Plaintiff could lift with or without the brace. (Tr. 221-222). He observed "[s]ome stiffness along the right knee" where Plaintiff wore the brace, noted that he "ambulated stiffly due to the Right Knee brace," noted that "the left knee is stiff and has significant crepitation and popping with movement," and that he "had trouble bearing weight on right leg when [he removed] the brace." (Tr. 221-222). Dr. Agha went on to say that, despite his knee problems and stated diagnosis of right knee osteoarthritis, Plaintiff could stand or walk for up to six hours in an eight-hour workday. (Tr. 223). The ALJ discussed Dr. Agha's report twice in his decision, acknowledging the finding that Plaintiff could stand or walk for up to six hours in an eight-hour workday. (Tr. 26, 28).

The ALJ also discussed other evidence in the record regarding Plaintiff's knee, including X-rays taken on April 25, 2011 showing no significant findings. (Tr. 26 (citing 224-225)).The ALJ also noted that when Plaintiff went to the emergency room with complaints of knee and shoulder pain on February 2, 2012, there were no significant findings, and his treating physician's assistant did not see the need to obtain x-rays. ((Tr. 27 (citing Tr. 257-259)). At that time, Plaintiff had a full range of motion in his knee, very little pain with manipulation, no evidence of

joint problems, no evidence of infection, and "mild" pain with no evidence of tenderness or swelling. (Tr. 27 (citing Tr. 258-259)). Plaintiff was advised to seek further treatment with an orthopedist, but no evidence of any follow-up appears in the record. (Tr. 27 (citing Tr. 259)). Plaintiff did walk with a "slight limp" and used a cane when he first applied for benefits (Tr. 168), but not when he appeared at his ALJ hearing; the ALJ acknowledged these facts and, in light of the entire record, found that Plaintiff was not as limited as he claimed to be. (Tr. 27-28). Nevertheless, there is no evidence in the record that Plaintiff was prescribed a cane. See SSR 96-9p, 1996 WL 374185, at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed…").

Plaintiff has not offered the court any medical evidence of record that contradicts the ALJ's analysis or otherwise calls it into question. The court, upon review of the record as a whole, finds no such contradictory evidence. The court finds that the ALJ's analysis here is thorough and does not frustrate meaningful review. Thus, because the ALJ appropriately discussed the medical evidence of record in relation to Plaintiff's limitations, and appropriately considered the functions required for analysis under SSR 96-8p, Plaintiff's first assignment of error will be overruled. See Mascio, 780 F.3d at 636.

### 3. *Second Assignment of Error: Consideration of Impairments*

Plaintiff also alleges that the ALJ failed to consider all of his impairments, including those that are not severe. Specifically, Plaintiff argues that his functional illiteracy and educational deficit should have been considered in the formulation of his RFC. At step two of the sequential evaluation, Plaintiff must show the existence of a medically determinable impairment,

and then show it is severe[1]. 20 C.F.R. 404.1520(a)(4)(ii), Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). Plaintiff correctly notes that when an ALJ finds at least one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2); SSR 96-8p. To the extent Plaintiff argues that his functional illiteracy should have been considered at Step Two, the court notes that "[i]lliteracy is not…an impairment, but is instead a vocational factor that is considered when determining whether there are other jobs in the national economy that a claimant can perform….The ALJ was not required to consider plaintiff's illiteracy as an impairment, either severe or non-severe." Gann v. Astrue, No. 1:09CV355, 2010 WL 3811942, at *11 (W.D.N.C. Sept. 1, 2010) report and recommendation adopted, No. 1:09CV355, 2010 WL 3811515 (W.D.N.C. Sept. 27, 2010) (citing 20 C.F.R. § 404.1564(b)(1)). Nonetheless, review of the ALJ's decision indicates that the ALJ fully considered Plaintiff's educational and literacy limitations in his decision. As explained below, the ALJ addresses such matters in his written decision, formulated RFC, direct questioning to Plaintiff at the hearing, and questioning to the vocational expert. (Tr. 25, 27, 29, 30, 46-48, 76).

For example, in identifying Plaintiff's impairments, the ALJ specifically referenced Plaintiff's own statements about his inability to read and write anything other than his name and the fact that he had left school after 6th grade. (Tr. 23-24). He also discussed evidence of test

---

1 An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. See 20 C.F.R. 404.1521 and 416.921; Social Security Rulings ("SSR"s) 85-28, 96-3p, and 96-4p. Basic work activities are those necessary to do most jobs, including walking, standing, sitting, lifting, carrying, seeing, hearing, speaking, using judgment, responding appropriately to supervision, co-workers and usual work situations, and understanding, carrying out, and remembering simple instructions. 20 C.F.R. § 404.1521.

scores, pointing out that despite low scores and abilities, Plaintiff had performed semi-skilled work for a period of years. (Tr. 23-24, 24-25). The ALJ also discussed Plaintiff's mental limitations both in terms of severity and in connection with his RFC analysis, specifically referencing in the RFC that Plaintiff was functionally illiterate. (Tr. 25). The ALJ also stated as follows:

> With regard to mental functioning, I find that, through the date last insured, the claimant would have been able to perform the mental demands of medium work activity. Following the consultative examination, Dr. Agha acknowledged the claimant had "stated" illiteracy; however, proffered no specific limitations in this regard. Although functionally illiterate, this impairment would not, in any way, have restricted the claimant's activities of daily living, social functioning, or the ability to maintain concentration, persistence, and pace, of any consequence, through the date last insured.

(Tr. 29.). The ALJ also took such limitations into account when questioning the vocational expert:

> I have additionally acknowledged and considered the subjective limitations relative to the Plaintiff's functional literacy, including the proffered test scores in CASAS testing. However, sworn testimony from the vocational expert at the hearing reflects that, given claimant's established [RFC], there would have been jobs existing in both regional and national economies, which would have accommodated even functional illiteracy, through the date last insured.

(Tr. 27). Thus, the court finds that the ALJ explicitly addressed the limitation of Plaintiff's illiteracy and considered such limitation along with the impairments that the ALJ found to be severe. Plaintiff's second assignment of error is therefore overruled.

### 4. *Third Assignment of Error: Ability to Perform Work for a Full Workday*

Next, Plaintiff argues that the ALJ erred by failing to assess Plaintiff's ability to perform work-related activities for a full workday. Plaintiff correctly notes that that SSR 96-8p requires that "[i]n assessing RFC, the adjudicator must discuss the individual's ability to perform

sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, 1996 WL 374184, at *7. Plaintiff concedes that the ALJ appropriately expressed his ability to sit, stand, or walk in terms of an eight-hour workday. (Pl. Br. 10; Tr. 25, 28). As for other functions, the ALJ limited Plaintiff's ability to kneel or crawl to an "occasional" basis and limited Plaintiff to "frequent" reaching with his upper extremities. (Tr. 25, 28). The ability to perform a function on an "occasional" basis corresponds to one-third of an eight-hour workday, and the ability to tolerate a work function on "frequent" basis corresponds to two-thirds of an eight-hour workday. See SSR 83-10, 1983 WL 31251, at *5-6 (1983). Thus, the ALJ appropriately discussed Plaintiff's abilities as they could be performed over the course of the workday.

The court also believes that remand would be futile on this issue because Plaintiff has not offered the court any evidence in the record other than his own testimony, which the ALJ found to be only partially credible[2], that calls into question his ability to perform work activities at the levels determined by the ALJ. See (Tr. 26). The Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) discussed the requirements of SSR 96-8p noted above and was particularly concerned with the ALJ's failure in that case to discuss the claimant's ability to perform relevant functions for a full workday. Id. at 636. See also Newton v. Colvin, No. 3:14-CV-371-RJC-DSC, 2015 WL 4411110, at *3; Scruggs v. Colvin, 2015 WL 2250890 at *4-5 (W.D.N.C. May 12, 2015) (W.D.N.C. July 20, 2015). The Mascio Court concluded that remand was appropriate in

---

2 As Plaintiff has failed to raise any objection to the ALJ's credibility analysis, the court need not review such determination.

that case because the ALJ had determined that the claimant could perform certain functions, but "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence in the record on that point. Mascio, 780 F.3d at 637. Because the court was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions," remand was appropriate. Id. Here, unlike in Mascio, there is no evidence in the record to contradict the ALJ's determinations about Plaintiff's ability to perform certain functions for certain amounts of a workday. The RFC and the questions to the VE incorporated the limitations described herein in temporal terms. Finding no error in the ALJ's consideration of Plaintiff's ability to perform certain functions for a full workday, the court will overrule this assignment of error.

### 5. *Fourth Assignment of Error: Vocational Expert Testimony*

Finally, Plaintiff argues that the ALJ erred in relying on vocational expert ("VE") testimony elicited in response to an improper hypothetical question. As Plaintiff notes, "[t]he purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (internal citation omitted). Plaintiff argues that the ALJ should have "clearly and unequivocally" included a limitation of illiteracy in his hypothetical to the VE and that "as the record stands, it is not clear whether the ALJ thinks the claimant has a limitation regarding literacy or whether the ALJ is rejecting the notion that the claimant is illiterate." (Pl. Brief (#10) at p. 13). After careful

review of the hearing transcript and the written decision, the court cannot agree with Plaintiff's assertions. The plain language of the ALJ's decision shows appropriate consideration of Plaintiff's functional illiteracy and the hearing transcript reveals that the ALJ posed hypothetical questions relevant to Plaintiff's illiteracy to the VE. (Tr. 29, 30, 76-77, 80-82). As noted above, the burden of proof at the fifth step of the sequential evaluation process shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). The ALJ may meet this burden by relying on testimony from a vocational expert to supply information on what jobs a given claimant can do, in light of his attributes and abilities. 20 C.F.R. §§ 404.1566(e).

At the hearing, in fully describing the RFC and limitations discussed throughout this decision, (Tr. 74-76), the ALJ specifically asked the VE to provide testimony about any jobs available to someone who was:

> essentially functionally illiterate, but it in no way restricted his activities of daily living of any consequence or his social functioning, or his ability to maintain concentration, persistence, and pace . . . All right?

(Tr. 76). In response, the VE identified four examples of jobs that someone like Plaintiff could perform at the medium exertional level and four examples of jobs at the light exertional level.[3] (Tr. 76-77). Plaintiff's counsel then cross-examined the VE on the effect illiteracy would have on the ability to perform the jobs cited, specifically asking the VE if the identified jobs could be performed by someone with an "inability to read or write." (Tr. 80-81). When the VE responded that the inability to read or write would not affect an individual's ability to perform one of the light exertional jobs identified (groover operator), Plaintiff's counsel then asked if another one of

---

3 The Social Security Regulations provide that an individual who can perform medium work is also presumed to be able to perform light and sedentary work. 20 C.F.R. § 404.1567(c).

the light jobs identified (bench assembler) could be learned through verbal, as opposed to written, instructions. (Tr. 81). The VE responded that the job could be learned through verbal instructions, confirming that illiteracy—functional or otherwise—had no effect on the jobs available to someone like Plaintiff. (Tr. 82.) The ALJ discussed this testimony in his decision, noting that Plaintiff's ability to perform medium work was impeded by additional limitations, and that he asked the VE whether those limitations, including education, would allow for a finding that Plaintiff could perform work available in the economy. (Tr. 30). The ALJ, relying on the VE's testimony, found that there were jobs available in the economy that Plaintiff could perform. (Tr. 30-31). Thus, the record shows that the ALJ considered functional illiteracy as part of his hypothetical questioning to the VE and then incorporated that answer into his decision. (Tr. 29, 30).

### E. Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (#9) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (#11) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: October 23, 2015

Max O. Cogburn Jr.
United States District Judge